IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **ODULAJA SAMSON ODUWOLE,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | Civil Action No. 4:23-cv-01127-O-BP |
| § | |
| **LYFT INC.,** § | |
| § | |
| **Defendant.** § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is the Complaint filed by Plaintiff Odulaja Samson Oduwole ("Oduwole") (ECF No. 1) and Oduwole's Response to the Court's Questionnaire (ECF No. 9). This case was automatically referred to the undersigned pursuant to Special Order 3. ECF No. 3. By Order dated November 13, 2023, the Court granted Oduwole's Application to Proceed in District Court Without Prepaying Fees or Costs (ECF No. 2), subject to judicial screening under 28 U.S.C. § 1915. ECF No. 5. To better evaluate his allegations, the Court ordered Oduwole to answer a Questionnaire concerning his claims. ECF No. 6. Oduwole filed his Response to the Questionnaire on January 24, 2024. ECF No. 9.

**I.    BACKGROUND**

Oduwole was a driver for Defendant Lyft Inc. ("Lyft") from around January to July 2022. ECF No. 1. He seeks to bring a class action lawsuit on behalf of himself and other Lyft drivers for $700 billion, because he alleges that Lyft has been "stealing from them with different tricks." ECF No. 1 at 2. Specifically, he claims that Lyft has engaged in a series of fraudulent activities "with different charges and deductions from individual accounts[,]" resulting in Lyft taking 65% of driver profits. *Id*. at 3. Oduwole claims that these tricks include the various "maintenance,

insurance, and other tax" deductions which Lyft takes from every paycheck. *Id*. He alleges that these are improper because (1) the drivers own and maintain their own vehicles, and (2) Lyft does not properly "remit the [tax] money to the government purse." *Id*.

When asked to state specifically all relief he is seeking in this action for the damages he himself suffered, Oduwole directed the Court to attachments he included in his Complaint and Questionnaire Answer. ECF No. 9 at 5. He maintains that these consist of "all relevant documents related to this claim." ECF No. 9 at 2.

These documents largely consist of Oduwole's weekly earning summaries from January 2022 to July 2022, in which he marks the "service expense" deductions as the ones he disputes. ECF Nos. 1 at 6-62; 9 at 32-87. Altogether, he seems to dispute $7,450.30 worth of deductions. *Id*. Oduwole also attaches a letter from the Internal Revenue Service showing that he owes $17,522.00 in taxes as of August 31, 2023 (ECF No. 9 at 7); his bank statements from January through July 2022, in which he had flagged monthly insurance payments totaling $464.76 (ECF No. 9 at 11-17), and toll bills and notices of nonpayment which, at most, seem to indicate that he believes Lyft owes him $912.69 (ECF No. 9 at 18-26).

When asked if he disputed any other deductions, he responded in the affirmative, claiming that Lyft should have reimbursed him for his car maintenance expenses and the cost of his pre-employment background check, but he did not specify how much these costs were. ECF No. 9 at 3-4. It is difficult to discern from the documents Oduwole attached exactly how much money he contends that Lyft stole from him, but liberally construed, Oduwole alleges that Lyft owes him $26,349.75, plus the costs of his vehicle maintenance and pre-employment background check.

**II.   LEGAL STANDARD**

"Federal courts are courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). District courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject-matter jurisdiction over a case. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("[A] federal court may raise subject matter jurisdiction *sua sponte*."). A court will not assume it has jurisdiction. Rather, "the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citation omitted). Accordingly, "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, *Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). Any dismissal for lack of subject matter jurisdiction "should be made without prejudice." *Mitchell v. Bailey*, 982 F.3d 937, 944 (5th Cir. 2020).

A federal court has subject-matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," and civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and diversity of citizenship exists

3

between the parties. 28 U.S.C. §§ 1331, 1332. Oduwole only brings claims under state law, so for the Court to have subject-matter jurisdiction over the case, diversity jurisdiction must exist. "Section 1332 does not provide further guidance on how to determine the amount in controversy. But other statutory provisions do," including 28 U.S.C. § 1446. *Durbois v. Deutsche Bank Nat. Trust Co.*, 37 F.4th 1053, 1056 (5th Cir. 2022). Generally, "the sum demanded in good faith in the initial pleadings is the amount in controversy." *Id.* (citing 28 U.S.C. § 1446(c)(2)).

Additionally, because Oduwole proceeds *in forma pauperis*, his Complaint is subject to *sua sponte* dismissal if it is "frivolous or malicious" or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009). A complaint lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Neitzke*, 490 U.S. at 326-27; *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999). To state a viable claim for relief, Federal Rule of Civil Procedure 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). To demonstrate entitlement to relief, the complaint must plead "enough facts to state a claim to relief that is plausible on its face" with sufficient specificity to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Court subjects the pleadings of *pro se* parties to less rigid analysis than those of a party represented by counsel. Courts must hold "a *pro se* complaint, 'however inartfully pleaded,' . . . to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). However, "even a liberally-construed *pro se* . . . complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Tex. at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988) (citing *Bounds v.*

*Smith*, 430 U.S. 817, 825-26 (1977)). Thus, a court inquires "whether within the universe of theoretically provable facts there exists a set which can support a cause of action under [the] complaint, indulgently read." *Covington v. Cole*, 528 F.2d 1365, 1370 (5th Cir. 1976).

### III. ANALYSIS

A pro se plaintiff's ability to serve as an adequate class action representative "is dubious." *See McGrew v. Texas Bd. of Pardons & Paroles*, 47 F.3d 158, 162 (5th Cir. 1995). "Indeed, courts throughout this circuit consistently hold that *pro se* plaintiffs may not serve as class representatives." *Williams v. Solar Alternatives, Inc.*, No. CV 23-2533, 2023 WL 4931853, at *2 (E.D. La. Aug. 2, 2023) (collecting cases), *rec. adopted*, No. CV 23-2533, 2023 WL 6121796 (E.D. La. Sept. 19, 2023). Further, while individuals may represent themselves under 28 U.S.C. § 1654, the statute does not allow a person who is not a licensed attorney to represent anyone else. And in the Fifth Circuit, "those not licensed to practice law may not represent the legal interest of others." *Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 210 (5th Cir. 2016). Oduwole is not licensed to practice law, so he is incapable of prosecuting class claims on behalf of others without an attorney. Thus, Oduwole is limited to seeking relief for the damages that he alleges he himself suffered.

While Oduwole pleads $700 billion in damages for the class, he at most pleads $26,349.75 in damages for himself. ECF Nos. 1, 9. This is generous, as Oduwole does not plead facts to show that the service expense deductions are not valid under his employment agreement, or that Lyft is obligated to pay for its drivers' pre-employment background checks, vehicle maintenance expenses, tolls, or personal income taxes. Because Oduwole has neither alleged an amount in controversy sufficient to satisfy the requirements of diversity jurisdiction, nor stated a claim under federal question jurisdiction, this court lacks subject matter jurisdiction over this case.

## IV.   CONCLUSION

Because Oduwole has not alleged facts to show that the Court has subject matter jurisdiction over his case, Judge O'Connor should **DISMISS** this case **without prejudice** so that Oduwole may pursue his state remedies in an appropriate state court.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on February 12, 2024.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

6